```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

```
                              )
UNITED STATES OF AMERICA      )
                              )
          v.                  )   CRIMINAL NO. 04-10306-PBS
                              )
TREVOR CHARLTON,              )
                              )
          Defendant.          )
                              )
```

**MEMORANDUM AND ORDER**

August 18, 2005

SARIS, U.S.D.J.

## I.   INTRODUCTION

Defendant Trevor Charlton moves to suppress statements and physical evidence seized from his person on the grounds that the police had no probable cause to arrest him and they failed to give him his <u>Miranda</u> rights.  At the evidentiary hearings, Brockton Police Officers Michael Scanlon and Michael Cesarini, Detectives David Delehoy, James Smith, and Erik Hilliard, and Sergeant Richard Linehan testified.  Following the hearings of June 10 and June 22, 2005, the motion to suppress is **DENIED**.

## II.   FINDINGS OF FACT

On July 25, 2004, at about 9:50 p.m., the Brockton police received a report that someone had been shot at 83 Forest Avenue in Brockton, Massachusetts.  Within minutes of this transmission, Officer Scanlon arrived at the scene, where Officers Steven

1

Scibetta and Michael Skinner were speaking with witnesses. Scanlon interviewed Vasco Andrade, a resident of 83 Forest Avenue and brother of the victim, Pedro. Vasco stated that he had arrived at the residence, observed Lisa Sanders, who lived with Vasco, speaking to a man he knew as "Kurt," and went inside. Soon thereafter, Pedro's girlfriend Lillian Gomes ran inside exclaiming that Pedro had been shot. Vasco and Gomes ran to the corner of a nearby intersection, saw Pedro bleeding, and arranged for a friend to take Pedro to the hospital.

Scanlon next spoke with Lisa Sanders, who told him that she was talking to Kurt in the driveway when Gomes came over to them and said that Pedro had been stabbed. Kurt responded, "Is that the dude I just stabbed?" Sanders said a Yellow Cab taxi then arrived and Kurt got into it and left. Officer Scanlon checked the site of the stabbing and found fresh blood; he also found blood at the location where Pedro lived in Brockton, 27 Central Square.

Meanwhile, after hearing the first report of a shooting, Detectives Delehoy, Carde, and Hilliard, all wearing plain clothes and driving an unmarked cruiser, heard a second transmission, which stated that the suspected shooter was a black male called "Kurt," who was wearing a white shirt and had left the scene in a Yellow Cab. Delehoy and Hilliard knew "Kurt" or "Kirk" as defendant Trevor Charlton; Hilliard had arrested

Charlton once before. They knew that Charlton had prior arrests and convictions for assaults and batteries, including a stabbing.

A third transmission went out a few moments later stating that the cab had gone to 37 Ellsworth Street, and the three detectives immediately drove there. When they arrived at Ellsworth Street, they observed five men on or near the porch outside the house. There was a concrete pillar at the bottom of the steps leading up to the porch, and a white shirt on top of the pillar. The defendant was adjacent to the pillar, within an arm's length of it, and was the closest person to the pillar and the white shirt. He wore a white tank top and jeans, and was the only person matching the transmitted description of the fleeing suspect. Also present were Detective Smith and Lieutenant McCabe; Sergeant Linehan arrived shortly thereafter.

Delehoy instructed the men to walk down from the porch and move to one area on the sidewalk to contain them. He went to the pillar and began to pick up the shirt but noticed that it felt heavy. Unfolding it, he observed the butt end of a handgun and immediately told the other officers to handcuff all five men. Delehoy testified that he did not intend to arrest either the defendant or any of the men at that point: the handcuff order was to ensure the safety of those present and to control the situation while securing the gun and investigating the shooting.

Upon Delehoy's order, the five men were handcuffed;

Detective Smith handcuffed Charlton.  Hilliard secured the gun by clearing the chamber and removing the ammunition.  Delehoy found a white knit cap and white "doo rag" with the white shirt on the pillar; there appeared to be blood stains on the shirt and cap.

   Sergeant Linehan took the defendant, handcuffed, to his cruiser and found a knife in the defendant's back pocket when he patted him down.  Once in the cruiser, Linehan Mirandized Charlton, a process witnessed by Detective Hilliard.  Linehan did not consider Charlton to be under arrest at that point; he gave the Miranda warnings prophylactically, he said, in case Charlton was later arrested.  The defendant told Linehan that he had been on the third floor of 37 Ellsworth with his girlfriend.  Linehan said he would confirm the story with Charlton's girlfriend, but Charlton told Sergeant Linehan to wait, that he wanted to tell truth.  The defendant stated that he had received a call from Lisa, a girl he was trying to "get with," and she asked him to come to 83 Forest Avenue.  He arrived and began talking to Lisa when he suddenly felt someone run up to him and push him against the steering wheel.  The attacker told Charlton to place his hands on the wheel, but Charlton was able to break away. Charlton pulled a knife from his pocket and stabbed the assailant.  The other man fled from the scene, and Charlton tried to find his car keys to  leave.  He fled on foot, however, when unable to find the keys.  Charlton admitted to Linehan that the

4

white shirt and doo-rag on the pillar were his.  Linehan then told the defendant that he was under arrest for being a felon in possession of a gun and assault and battery on Pedro Andrade.

The defendant was taken to the police station in Linehan's cruiser.  Following Charlton's booking, Linehan again gave Charlton his <u>Miranda</u> rights orally, although Charlton did not sign a written consent form.  Detectives Hilliard and Delehoy then interrogated the defendant.  He stated that upon arrival at 83 Forest Avenue, one person got into his car while another reached through his window and began choking him.  Charlton believed that he was being robbed by his attackers because he sold drugs and was thought to have a lot of money.  He then stabbed an attacker in self-defense.  Charlton also claimed to have been bitten in the altercation, and the detectives did observe a mark on him.

Charlton stated that, fearing retaliation, he returned to 37 Ellsworth Street for protection.  He retrieved the gun from a hallway where it was hidden in a brown bag and called others to help defend him.  He had just wrapped the gun in his white shirt when the police officers began to arrive.

### III.  CONCLUSIONS OF LAW

It is "imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?"  Terry v. Ohio, 392 U.S. 1, 21-22 (1968) (internal citations omitted).

I find that the initial detention of defendant Charlton was a lawful Terry stop because the officers had a reasonable suspicion that Charlton had committed a crime - he fit the physical description of the fleeing suspect, was found at the location where the suspect was reported to have fled by cab, and was known by the officers to use the street name "Kurt" or "Kirk."  Terry, 392 U.S. at 19.  I find that the Terry stop was reasonably related in scope to the circumstances of the investigation.  Detective Delehoy discovered the gun before ordering the defendant, who was closest to the gun, handcuffed, and had a reasonable basis for believing that the defendant had been involved in a stabbing.  Placing the defendant in handcuffs during the Terry stop was a reasonable means to ensure the safety of all those present while the gun was secured.  See United States v. Fornia-Castillo, 408 F.3d 52, 64-65 (1st Cir. 2005).

> When an officer is justified in believing
> that the individual whose suspicious behavior
> he is investigating at close range is armed

> and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

Terry, 392 U.S. at 24. "A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." United States v. Sharpe, 470 U.S. 675, 686 (1985).

The police interrogated Charlton after he received his Miranda rights while he was in the cruiser and handcuffed. The officer may ask the detainee a reasonable amount of questions in order to "determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released." Berkemer v. McCarty, 468 U.S. 420, 439 (1984). Once Charlton admitted that the gun was his and he stabbed someone in an altercation, there was sufficient probable cause to place him under arrest for assault and battery and being a felon in possession of a gun.

There is some question about when Charlton was actually arrested. The police believed he was still being detained under Terry during the interrogation in the cruiser. While this is a

gray area, I conclude the detention had morphed into a de facto arrest because he was alone, with two police officer in a cruiser in handcuffs.  However, the distinction does not matter here because defendant was Mirandized before he was interrogated.

Finally, Charlton, who was timely given his <u>Miranda</u> warnings twice, and who had previous experience with the criminal justice system, gave the statements voluntarily.

### IV. ORDER

The motion to suppress statements made by defendant Trevor Charlton and physical evidence found on his person (Docket No. 19) is **<u>DENIED</u>**.

                                        **<u>S/PATTI B. SARIS</u>**

                                        United States District Judge