```
                   UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS
```

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | CRIMINAL NO.  04-10306-PBS |
| | ) | |
| **TREVOR CHARLTON** | ) | |

<u>**TRIAL MEMORANDUM OF THE UNITED STATES**</u>

The United States submits this memorandum in the above-captioned case, which is scheduled for trial on March 6, 2006.

**I.   SUMMARY OF GOVERNMENT'S CASE**

A.   <u>Facts</u>

In this case, the United States charges that the defendant, having previously been convicted of a felony, possessed the firearm specified in the indictment, in violation of 18 U.S.C. § 922(g)(1).

The facts are simple.  The government will offer evidence that, on July 25, 2004, the defendant was involved in an altercation with a man named Pedro Andrade in front of 83 Forest Avenue in Brockton.  Andrade (who has since been deported) approached the defendant, who was sitting in a car, and began choking him.  The defendant responded by pulling out a knife and stabbing Andrade, with the ultimate result that Andrade stopped choking the defendant and ran from the scene.

The defendant had been talking with a young woman named Lisa Sanders when Andrade approached the defendant.  Sanders knew the defendant by his nickname "Kurt."  Sanders also knew Andrade (he

was the brother of her step-father), but she had not recognized him, given the way he had been dressed.  After Andrade left, Sanders saw the defendant open the glove compartment of the car, reach in, and remove something, and then get out of the car holding a black handgun.  The defendant started to follow Andrade with the gun, but then stopped and hugged Sanders.  He also placed a call on his cell phone, describing what had just happened to him, and had some conversation with some passersby.  Soon thereafter, Liliana Gomes, Andrade's girlfriend, arrived, screaming that her boyfriend had been shot.  The defendant asked whether Gomes was referring to the person he had just stabbed.

Gomes ran to the door of 83 Forest Avenue to try to speak with Andrade's bother.  Sanders turned around and saw the defendant getting into a cab and leave the scene in the cab.  Members of the Brockton Police Department thereafter arrived and began investigating.

The Brockton dispatcher put out a call regarding the incident at 83 Forest Avenue, which at that time was believed to have been a shooting.  Detective Delehoy, accompanied by Detectives Carde and Hilliard, was on his way to 83 Forest Avenue when he received information over the radio that the suspect, "Kirk," had gotten into a Yellow Cab and was on his way to 37 Ellsworth Street wearing a white shirt and glasses.  He and the other detectives went to 37 Ellsworth Street.

When they arrived, another detective was standing just outside the door of his police vehicle. Officer Delehoy saw five black males, four of whom he knew, standing near the building. One of the males was the defendant, whose nickname Detective Delehoy thought to be "Kirk."[1] He was wearing a white tank top and jeans. The defendant was standing near a concrete pillar at the bottom of the steps leading to the building. There was another white shirt on the concrete pillar next to the defendant.

The police instructed all five males out to the sidewalk area. Detective Delehoy went to inspect the white shirt, which felt heavy. He manipulated the shirt and saw the grip of a handgun. Detective Delehoy advised the other members of the police to place handcuffs on the men on the sidewalk for safety. Detective Hilliard, wearing gloves, then rendered the handgun safe, observing that there was a round in the chamber and that the gun was cocked. The gun was black.

Detective Delehoy also observed that the white shirt had what appeared to be blood stains on it.

The defendant was taken to Sergeant Linehan's cruiser. Sergeant Linehan frisked the defendant and located a knife in his back pocket. Once in the cruiser, Sergeant Linehan read the defendant his <u>Miranda</u> rights, which he waived. The defendant

---

[1] Detective now understands the defendant's nickname to be "Kurt" and that he previously, including the night of July 25, 2004, had been mishearing it as "Kirk."

initially told the detective he had been on the third floor of 37 Ellsworth Street with his girlfriend, whom he knew by first name only. The Sergeant told the defendant he would check the story with the girlfriend, and the defendant told the Sergeant to wait, that he wanted to tell the truth. He then told the Sergeant, in substance, that he did not shoot anybody but had stabbed somebody. He said that a girl he was trying to "get with" called him and asked him to come over to 83 Forest Avenue. He parked his car in the driveway and met up with the girl, Lisa. As he was talking with Lisa, he felt someone run up on him and shove his face toward the dashboard. The assailant told the defendant to put his hands on the wheel. The defendant broke away and pulled a knife from his rear pants pocket, using it to stab the man who was assaulting him. The other man fled and the defendant tried to find his keys to drive away, but they were gone. The defendant then fled on foot.

   Sergeant Linehan asked the defendant about the white t-shirt he had been wearing on his head. The defendant told him he did not have another shirt. The Sergeant asked the defendant why he would not tell the truth about this, indicating that the shirt recovered from the steps was the only shirt that had blood on it. The defendant then admitted that both the shirt and headware found with it were his.

   At the police station, Detectives Delehoy and Hilliard spoke

4

further with the defendant.  They asked the defendant about the gun.  The defendant said that, after the altercation, he returned to 37 Ellsworth Street and retrieved the gun from the hallway, where it was hidden in a brown bag.  The defendant indicated that he had not had it with him before but came back to get it because his life was in danger.  He said that he had just wrapped the gun in his clothing and walked down the front steps when the first detective arrived.  He also indicated in speaking with the detectives, among other things, that people thought he carried a lot of money because he sold drugs.

Members of the Brockton Police Department and the Plymouth Sheriff's Department responded to the hospital, where Andrade was being treated for the knife wounds.  A sample of his blood was taken.  The Massachusetts State Police Laboratory thereafter determined that there was human blood on both the knife and the shirt that had been wrapped around the gun.  They submitted a cutting from the shirt and a swab from the knife, along with Andrade's known blood sample, to Cellmark, a commercial DNA laboratory.  Cellmark determined that Andrade was the major contributor of DNA found on the shirt cutting and was the source of the blood found on the knife.

The gun proved to function properly when test-fired.  Efforts to process the magazine from the firearm and the ammunition contained in the firearm for identifiable latent

fingerprints were unsuccessful.  Ridge detail visible in the blood on the knife proved to be insufficient for identification purposes.

    B.    <u>Elements of the Offense</u>

The elements of a § 922(g)(1) offense are:

(1)    that the defendant knowingly possessed a firearm;

(2)    that such possession was in or affecting commerce; and

(3)    that the defendant previously had been convicted in any court of a crime punishable by imprisonment for a term exceeding one year.

The parties will stipulate that the defendant was convicted of a felony prior to July 25, 2004.  Thus, the only questions at trial will be whether (1) the firearm introduced in evidence is a firearm as that term is defined at 18 U.S.C. § 921; (2) whether the defendant knowingly possessed the firearm; and (3) whether such possession was in or affecting commerce, <u>i.e</u>. whether the firearm crossed state lines prior to May 13, 2004.

**II.  LEGAL AND EVIDENTIARY ISSUES**

As indicated above and in the government's pending motion in limine, the defendant's statement to the Brockton detectives discloses two motives for his possession of the firearm.  First, he told the detectives that his immediate purpose in having the firearm was to protect himself against anticipated retribution from Andrade.  Second, the defendant told the detectives, in essence, that he was a drug dealer at the time.  As argued in the

motion in limine, the defendant's drug dealing provides an additional, more general motive for the defendant's possession of a firearm at the time in question.

The government also seeks in its motion in limine to exclude evidence that another person who was with the defendant in front of 37 Ellsworth Street on the night of July 25 was convicted in 2002 of carrying a firearm without a license.

**LENGTH OF TRIAL**

The government expects the duration of its case-in-chief, exclusive of jury selection, will be approximately four to five days.

                                Respectfully submitted,

                                MICHAEL J. SULLIVAN
                                United States Attorney

                        By:  /s/Robert E. Richardson
                            ROBERT E. RICHARDSON
                            Assistant U.S. Attorney
                            (617) 748-3247

CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the foregoing to be served by electronic filing on Martin Richey, Esq., counsel of record for defendant Trevor Charlton.

                                /s/Robert E. Richardson
                                Robert E. Richardson