UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10306-PBS |
| | ) | |
| TREVOR CHARLTON | ) | |

DEFENDANT'S MOTION TO DISMISS INDICTMENT

Defendant, Trevor Charlton, moves to dismiss the indictment against him on the ground that further prosecution would violate the Double Jeopardy clause of the Fifth Amendment to the United States Constitution.

STATEMENT OF FACTS

Late on the morning of Thursday, March 16, 2006, the jury retired to deliberate the charge against defendant. Tr. 4-111.[1] Around noon, the jury sent a note asking whether it could see a police report. Tr. 4-112. After consulting briefly with counsel, the Court declined the jury's request. Tr. 4-114. The jury continued deliberations until approximately 5:00 p.m.

Court reconvened at 9:05 a.m. the following morning, at which time the Court sent the jury out to resume deliberations. Tr. 5(I)-3. Shortly thereafter, the jury requested a copy of the jury instructions. Id. The parties agreed that providing the jury with a written copy was appropriate, and the Court responded with a note stating that a transcript of the instructions would be provided as soon as it was prepared.[2] Tr. 5(I)-4. As the clerk was delivering that

---

[1] The transcript is cited herein first by reference to the day of trial, then by page number. Two different transcripts, by different reporters, were labeled "Day 5." The earlier Day 5 transcript is labeled herein as Tr. 5(I); the second as Tr. 5(II).

[2] The jury was provided with the transcript later in the day.

1

message, the jury requested a dictionary. Id. The parties agreed that providing a dictionary was inappropriate. Tr. 5(I)-5. In short order the jury sent another question asking whether it was "illegal for a person convicted of a crime . . . with punishment greater than a year in prison to possess a gun." Tr. 5(I)-6 - 5(I)-7. The Court and counsel formulated a written answer and sent it to the jury. Tr. 5(I)-7 - 5(I)-8. At approximately 10:25 a.m., the jury sent another question seeking factual information concerning an exhibit. Tr. 5(II)-2. The Court, with the agreement of counsel, responded that it could not comment on the evidence. Tr. 5(II)-4.

At 11:10 a.m., the Court informed counsel that it had received a note from the jury indicating that the jurors were at an impasse. Tr. 5(II)-7. The Court proposed delivering the Allen charge, but defense counsel objected and the Court agreed to tell the jury to keep deliberating. Tr. 5(II)-7 - Tr. 5(II)-8. The Court stated, however, that it would give the Allen charge if the jury again indicated that it was at an impasse. Id.

At 4:39 p.m., the Court received another note from the jury indicating that it was deadlocked. Tr. 5(II)-10. The Court decided to read the Allen charge to the jury over defense counsel's objection to doing so at such a late hour. Tr. 5(II)-10 - Tr. 5(II)-12. The Court prefaced the Allen charge by telling the jurors that it would allow them to decide whether they wanted to come back on Monday; the Court reiterated this instruction after it delivered the Allen charge. Tr. 5(II)-12 - Tr. 5(II)-15.

The jurors left the courtroom at 4:45 p.m. (Tr. 5(II)-15), and the Court recalled them at 5:02. Tr. 5(II)-18. The Court told them to return on Monday. Id.

Court and counsel met at 9:15 a.m., Monday, March 20, 2006. Defendant was not present because his delivery to the courthouse by the Marshals had been significantly delayed. Tr. 6-2.

At 10:00 a.m., the jury submitted a note containing the following two questions: "(1) May we consider in our verdict Mr. Charlton's presumed ignorance of the law under which he is being prosecuted? (2) Can knowing be separated from possession in this case?" Tr. 6-13. Defendant arrived in the courtroom at 10:20 a.m. Tr. 6-18. The jury was brought in, and, after asking whether any of the jurors had read or heard anything about the case over the weekend, the Court went on to answer the jury's two questions. Tr. 6-19 - 6-20. The court also gave the jury a written copy of the Allen charge, but refused defense counsel's request that the Court read the charge directly to the jury. Tr. 6-3 - 6-5.

At 1:04 p.m., Court reconvened outside the presence of the jury. Tr. 6-22. The Court informed the parties that at 11:32 a.m. (one hour after its last questions had been addressed) the jury had again indicated that it was deadlocked. Id. The Court proceeded to declare a mistrial over defense counsel's objection. Tr. 6-22 - 6-26.

## ARGUMENT

1. Introduction.

"A criminal defendant has a 'valued right' to have his or her guilt or innocence determined by the jury to which the prosecution's case is first presented." United States v. McIntosh, 380 F.3d 548, 553 (1st Cir. 2004) (quoting United States v. Jorn, 400 U.S. 470, 484 (1971)).

> This right is valued because of the onus of forcing a defendant to undergo multiple trials. In addition to the cost and potential public embarrassment that accompanies a trial, the fairness of the second trial may be compromised; having had a dress rehearsal, the government may adjust its case to impress the jury more favorably or to anticipate the defense.

Id. (citations omitted). A mistrial frustrates this right. Id.; see also Arizona v. Washington, 98

S.Ct. 824, 829-30 (1978). Courts have accordingly held that principles of Double Jeopardy bar the retrial of a defendant whose first trial ended in a mistrial over his objection, unless the mistrial "was occasioned by manifest necessity." McIntosh, 380 F.3d at 553. A properly declared hung jury is one example of manifest necessity. Id. "[I]t is the government's burden to show the existence of manifest necessity" however, "and that burden is a heavy one." Id.

    2.    Retrial is barred because the prosecution cannot prove that a mistrial was a manifest necessity.

The First Circuit has referred to three factors when assessing whether the "trial judge engaged in a 'scrupulous exercise of judicial discretion' in making the decision that a mistrial was necessary." United States v. Simonetti, 998 F.2d 39, 41 (1st Cir. 1993)(citations omitted). These factors are whether the trial judge "(1) considered alternatives to a mistrial, (2) afforded counsel an opportunity to be heard on the issue, and (3) decided precipitously or after sufficient reflection." Id. Application of these factors to the instant case shows that the mistrial here was improperly granted.

The Court's tone throughout the jury's deliberations was one of impatience. For example, the Court noted that the jury had asked a lot of questions (Tr. 5(I)-4, 5(I)-6, 5(II)-8), that it had been deliberating as long as it had heard testimony (Tr. 5(II)-8), and that this was a simple case (Tr. 5(II)-7).

This case, however, was not simple. On the contrary, the jury heard complex evidence regarding DNA, and was asked to determine whether the defendant constructively possessed a gun found near him and several other people.[3] Instead of seeing a thoughtful jury trying to

---

[3] That the jury was struggling with the meaning of constructive possession is evident from their question on the final day of the trial, when they asked whether the defendant had to *knowingly* possess the gun. Tr. 6-13.

untangle a complex question, the Court saw a jury that was unable to answer a simple question and therefore must be on its way to a deadlock.

Because of its impatience, which increased significantly over the course of Monday morning as the Court juggled defendant's late arrival and a second jury impanelment (Tr. 6-2 - 6-21), the Court failed to consider reasonable alternatives to declaring a mistrial and failed to act with sufficient reflection.

At 11:32 a.m. on Monday morning, the jury sent a note stating that it was deadlocked. Tr. 6-22. It is unclear how long the jury had been deliberating at that point because of the considerable confusion that arose over the course of the morning. The Court asked defense counsel her position. Tr. 6-22. Counsel asked the Court to instruct to the jury to continue deliberating until the end of the day. Id. Counsel argued that because the Court deviated from the usual Allen charge and had given it late on a Friday afternoon, the charge had been fatally undermined (see argument, infra). Id. She further argued that the jury had not sent a clear message that it was deadlocked, since cogent questions had been asked between indications that deliberations were at an impasse. Tr. 6-23. Without responding to defense counsel's proposal, other than to note that this was the third communication indicating a deadlock, the Court declared a mistrial. Id.

"Where there is a viable alternative to a mistrial and the district court fails adequately to explore it, a finding of manifest necessity cannot stand." United States v. Toribio-Lugo, 376 F.3d 33, 39 (1st Cir. 2004). Defense counsel's suggestion that the court ask the jurors to deliberate for the remainder of the day was a viable alternative to a mistrial. The jury had previously resumed deliberations after declaring itself deadlocked; four more hours might have

been enough time for it to reach unanimity.  A district court must "fully consider[]" before "reasonably reject[ing]" a lesser alternative to a mistrial.  United States v. McIntosh, 380 F.3d at 556.  Here, there is no evidence that the Court seriously considered whether additional time might have allowed the jurors to resolve their differences.  Furthermore, defense counsel's request was reasonable:  asking the jurors to deliberate four more hours when they were already in the courthouse would not have unduly burdened them.  Compare United States v. Lansdown, 460 F.2d 164, 169 (4th Cir. 1972)("The jurors would have suffered little additional hardship if required to remain at least until the end of the day.").

        3.      Retrial is barred because the Court erred by adding instructions to the Allen charge that undermined its effect and increased the likelihood of a mistrial.

Even if the Court finds that the Simonetti factors have been met, retrial is barred because of the Court's error in its delivery of the Allen charge.

On Friday at 4:39 p.m, the Court received a note from the jury indicating that it was deadlocked.  Tr. 5(II)-10.  The Court announced that it would deliver the Allen charge.  Id. Defense counsel immediately objected -- not to the giving of an Allen charge, per se -- but to giving it at 4:45 p.m. on a Friday afternoon (and St. Patrick's Day), which counsel argued was inherently coercive.  Id.  Counsel advocated the alternative of bringing the jury back Monday morning, at which time the Allen charge could be delivered in a non-coercive context.  Id.  The Court overruled the objection, and additionally expressed its intent to couple the Allen charge with a request that the jury decide whether there was any chance that they could reach a verdict and should return on Monday.  This exchange followed:

> [DEFENSE COUNSEL]: I would like to just be heard, your Honor. Your Honor, in this situation, this is not an inordinately long amount of time. We've

been here for five days. We have invested five days in this case, you Honor. You know, Mr. Charlton has a right to have this jury decide his case.

    THE COURT: Thank you very much. You've made your objection.

    [DEFENSE COUNSEL]: The jury –

    THE COURT: Could you bring the jury in, please. The have been out thirteen, fourteen hours.

    Does the government want to make a record?

    [GOVERNMENT COUNSEL]: Not at this time, your Honor. Thank you.

    THE COURT: They were out four hours yesterday, and they have been out eight, nine hours today.

    [DEFENSE COUNSEL]: My concern, your Honor, is that we're doing something that is for the court's and the parties' convenience that's not in the best interest of the defendant, and he deserves to have this jury decide the case. Jeopardy is attached, we've picked the jury –

    THE COURT: Thank you. I've heard you.

    [DEFENSE COUNSEL] – and to give the charge now, your Honor, at twenty minutes to 5:00 on St. Patrick's Day, a Friday, there are cases that talk about coerciveness of a Friday afternoon for the jury to decide the case.

    THE COURT: Thank you.

    [DEFENSE COUNSEL]: And also, your Honor, I would suggest that with all the questions that have come in –

    THE COURT: Thank you. They're coming in.

    [DEFENSE COUNSEL]: All right, I would ask to be heard again before –

    THE COURT: No.

    [DEFENSE COUNSEL]: I do have other things I'd like to say about the questions that were asked, your Honor.

    THE CLERK: All rise for the jury.

    (Jury enters the courtroom.)

Tr. 5(II)-11 - 5(II)-12.

The instruction then given by the Court was as follows:

    THE COURT:   Good afternoon. You all look exhausted. You've been at this now for about twelve, thirteen hours, and I understand that's a long time. I want to read to you a supplemental charge, and then I'm going to send you out again, and I'm going to ask you to talk seriously about whether you want to come back on Monday. I understand that it's now coming close to 5:00 and people won't want to stay here today, and I'm not going to hold you later than 5:00 o'clock. But I'm going to read you this charge, and I want you to go back after you've heard it and tell me whether you can come back Monday and try again or whether or not it's hopeless. So I'm going to read you this charge, and then I'm going to send out, and I'm going to ask that message. I will not hold you late today.

> [The Court reads the <u>Allen</u> charge.]
>
> I now instruct you to go back, and what I want you to do – it's late, it's St. Patrick's Day, I'm not going to hold you today, and you all look tired – I want you to go back and talk seriously about whether or not you can come back Monday with a fresh mind after a long weekend and try to resume deliberations based on this charge. So we will wait for your answer.

Tr. 5(II)-12 - 5(II)-15. When the jury left the courtroom, defense counsel reiterated her objection to "giving <u>them</u> the decision as to whether they want to come back on Monday." (emphasis added). Tr. 5-16.

The Court's instruction, which book-ended the <u>Allen</u> charge with an instruction to decide in fifteen minutes whether to resume deliberations, was erroneous for two reasons. First, the <u>Allen</u> charge asks jurors to reflect in depth about the reasonableness of their positions and their duty to return a verdict. By reading the <u>Allen</u> charge to the jurors and then asking them to decide in fifteen minutes whether they wanted to continue deliberating, the Court undermined the charge and rendered it inherently contradictory. Second, the charge as read by the Court strongly implied to the jury that it had deliberated long enough. This unfairly increased the likelihood of a mistrial. In fact, as defense counsel pointed out (Tr. 6-22), the charge inappropriately encouraged the jurors to cause a mistrial by deciding that they were deadlocked.[4]

"Experience demonstrates that juries should be encouraged to reach verdicts and should not be proffered an 'easy way out' by a judicial suggestion that a deadlock is an equally satisfactory alternative. It is the duty of the trial judge to determine when the jury has 'hung,' and then declare a mistrial." <u>United States v. United States Gypsum Co.</u>, 550 F.2d 115, 141 (3d Cir.

---

[4] The court compounded the error when it refused, over defense counsel's urging, to personally deliver the <u>Allen</u> charge to the jury in open court on Monday morning. Tr. 6-4.

1977) (Weis, J., dissenting).  Here, the jury was told that it had an easy way out, and that deadlock was an acceptable, even <u>expected</u>, resolution.  The result was that defendant was denied his right to a verdict by the jury first impaneled to decide the matter.  <u>United States v. McIntosh</u>, 380 F.3d at 553.

## CONCLUSION

For the forgoing reasons, the prosecution cannot show "manifest necessity" for a mistrial, and further prosecution would therefore violate defendant's right not to be twice put in jeopardy for the same offense, as guaranteed by the Fifth Amendment to the United States Constitution. Accordingly, the indictment against the defendant should be dismissed.

<div style="margin-left:4em">
TREVOR CHARLTON<br>
By his attorneys,

/s/ Catherine K. Byrne<br>
Catherine K. Byrne<br>
  B.B.O. #543838

/s/ J. Martin Richey<br>
J. Martin Richey<br>
  B.B.O. # 559902<br>
Federal Defender Office<br>
408 Atlantic Ave., 3rd Floor<br>
Boston, MA  02210<br>
Tel: 617-223-8061
</div>

### Certificate of Service

I, J. Martin Richey, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 23, 2006.

<div style="margin-left:4em">
/s/ J. Martin Richey<br>
J. Martin Richey
</div>