```
                     UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS


                                    )
UNITED STATES OF AMERICA            )
                                    )
         v.                         )  CRIMINAL ACTION NO. 04-10306-PBS
                                    )
TREVOR CHARLTON,                    )
              Defendant.            )
                                    )
```

**MEMORANDUM AND ORDER**

June 12, 2006

Saris, U.S.D.J.

### I.   INTRODUCTION

Defendant Trevor Charlton moves to dismiss the indictment against him for one count of being a felon in possession of a firearm and ammunition.  Defendant's trial on this charge ended in a mistrial when the Court decided that the jury was hopelessly deadlocked.  Defendant now contends that a retrial would violate the Double Jeopardy clause of the Fifth Amendment to the Constitution.  After review of the briefs, Defendant's motion is **<u>DENIED</u>**.

### II.   FACTUAL BACKGROUND

On September 29, 2004, Defendant was indicted on a single charge of being a felon in possession of a firearm and ammunition, arising out of an arrest on July 25, 2004 in Brockton, Massachusetts.  On March 13, 2006, the jury was empaneled and sworn, and Defendant's trial began.  After approximately seven hours of testimony, both sides rested and the

case went to the jury on March 16, 2006. During that afternoon and the following morning, the jury asked several questions, and the Court provided jurors with a tape recording and transcript of the jury instructions.

At 11:10 on Friday morning, March 17, after seven hours of deliberation, the jury sent a note to the Court stating that, "Our deliberations have reached an impasse." The Court suggested giving the Allen charge, but Defendant objected, arguing that the better approach would be to simply tell the jury to continue deliberating. The Court complied with Defendant's request, but noted that if the jury reported again that it was deadlocked that the Allen charge would be appropriate. (Trial Tr. 5:7-9, Mar. 17, 2006.)

At 4:39 that afternoon, after almost thirteen hours of deliberation, the jury sent another note to the Court: "We have gone over evidence numerous times and remain deadlocked on the same issue." (Id. at 10.) The Court decided to read the jury the Allen charge and ask them to return to the jury room to decide whether returning to continue deliberations after the weekend would be fruitful. Defendant strenuously objected, arguing that it was "coercive" to read the Allen charge and ask the jury if they would like to return given the late hour on Friday afternoon. The Court responded that, "It's too coercive to make them come back Monday." (Id. at 10-12.) The Court overruled the objection and called the jurors into the courtroom.

The Court then read the First Circuit pattern modified <u>Allen</u> charge to the jurors, (<u>First Circuit Pattern Jury Instructions</u> (Criminal) § 6.06 (2003)), and asked them to "go back and talk seriously about whether or not you can come back Monday with a fresh mind after a long weekend and try to resume deliberations based on this charge." (<u>Id.</u> at 15.)  After the jury exited, Defendant objected that the Court should not have left it up to the jury to decide whether they wanted to resume deliberations, but should have instead required them to return on Monday.  (<u>Id.</u> at 16.)  The Court responded that:

> You've made your position clear.  They've now been out significantly longer than the trial, having told me twice, twice, that they're deadlocked.  They've been working hard.  They've had the transcript now for about four hours.  They had the charge before that.  I gave them a typewritten product as to reasonable doubt.  I've answered six questions.  It's fully within my discretion and coercive to put people who come back a third time and say it's hopeless, it's coercive to force them to do that, and I will not do that.  I will declare a mistrial if they come back and tell me that.  If they want to come back the room is theirs for as long as they want it.

(<u>Id.</u> at 17.)  At 5:04, the jury returned to report that they had reached a consensus to come back to continue their deliberations on Monday morning.  (<u>Id.</u>)

The jury returned on the morning of Monday, March 20, and there was a significant delay due to problems with Defendant's transportation to the courthouse from prison.  While waiting for Defendant's arrival, defense counsel asked that the <u>Allen</u> charge be read to the jury again.  As an alternative, the Court decided

to provide the jury with a written version of the charge. (Trial Tr. 6:4, Mar. 20, 2006.) The Court had intended to address the jury with the parties present, but before Defendant arrived, the jury asked another question. (Id. at 13) Eventually, Defendant arrived, and the Court addressed the jury and answered their question. The Court also provided to the jury copies of a sanitized version of the Allen charge, noting that "you have your room as long as you want it . . . . That's your place, and we in no way will ever want to rush you." (Id. at 19-20.) At 11:32 that morning, the jury sent the Court a note that said, "The jury is deadlocked and cannot reach a unanimous verdict." (Id. at 22.) Defendant requested that the Court ask the jury to continue deliberating until the end of the day. (Id.) The government moved for a mistrial. (Id. at 23) This being the third time the jury had stated that they were deadlocked, after hearing from both parties, the Court granted the government's motion for a mistrial over Defendant's objection. (Id. at 23.) The Court brought the jury in and polled the jurors, each of whom confirmed that the jury was deadlocked, and the Court declared a mistrial. (Id.) The Court set a new trial date for June 19, 2006, with the Defendant agreeing to waive the necessary time under the Speedy Trial Act. (Id. at 30.)

    Defendant filed this motion to dismiss the indictment on May 23, 2006.

## III. DISCUSSION

**A.   Double Jeopardy and Mistrials**

The Double Jeopardy clause of the Fifth Amendment to the Constitution states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend V.  Courts have construed the clause "to bar retrial of a defendant after a mistrial ordered over the defendant's objection unless the mistrial was occasioned by manifest necessity." United States v. McIntosh, 380 F.3d 548, 553 (1st Cir. 2004).  The defendant has a valued right to have a particular sworn jury conclude the trial of his case, so the prosecution bears the burden of justifying declaration of a mistrial in a criminal case. United States v. Keene, 287 F.3d 229, 234 (1st Cir. 2002).  However, "a hung jury is the classic instance where a mistrial may be warranted, and that has been so in our jurisprudence for at least 175 years." United States v. Julien, 318 F.3d 316, 319 (1st Cir. 2003).  See also Arizona v. Washington, 434 U.S. 497, 509 (1978) (noting that "mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict" has been "long considered the classic basis for a proper mistrial"); Richardson v. United States, 468 U.S. 317, 324 (1984) (nothing that "we have constantly adhered to the rule that a retrial following a 'hung jury' does not violate the Double Jeopardy Clause"); McIntosh, 380 F.3d at 553 (stating that

"a hung jury is the paradigmatic example of manifest necessity"). As such, a "decision to declare a mistrial is committed to the sound discretion of the trial court." United States v. Barboni, 62 F.3d 5, 5 (1st Cir. 1995).

When reviewing decisions of a district court to grant a motion for a mistrial, the First Circuit has identified three relevant factors, acknowledging that "review is case-specific and cannot be discharged by resort to a mechanical checklist." United States v. Brown, 426 F.3d 32, 36 (1st Cir. 2005). Those three factors are: (1) whether the court provided counsel with an opportunity to be heard; (2) whether the court considered alternatives to a retrial; and (3) whether the court's decision was made after adequate reflection. Id. at 37 (citing United States v. Simonetti, 998 F.2d 39, 41 (1st Cir. 1993)) see also Keene, 287 F.3d at 234 (noting that because "each case is different, and the situations that may arise are simply too diverse to render a mechanical checklist desirable," the Simonetti factors are "not etched in stone" but "often serve as a useful starting point"). However, it "is well settled that an appeal from a denial of a motion to dismiss following a 'hung jury' does not normally present a valid Double Jeopardy claim." Barboni, 62 F.3d at 7.

**B.   The Motion to Dismiss**

Defendant presses two arguments in his motion to dismiss the

indictment: (1) that the Court failed to adequately consider requiring the jury to continue deliberating after their third communication of deadlock on Monday morning; and (2) the Court erred by delivering the <u>Allen</u> charge on Friday afternoon and allowing the jury to decide whether or not it wanted to return on Monday morning.  The Court will address each argument in turn.

1. **<u>Declaration of a Hung Jury</u>**

Defendant argues that the Court declared a mistrial too hastily and failed to consider adequately the alternative of requiring the jury to continue deliberating until the end of the day on Monday.  Upon review of the briefs and the trial transcript, the Court finds that the declaration of a mistrial was well within its discretion and was mandated by manifest necessity.  Despite Defendant's protestations, the case was a simple one: the trial was on one count of firearm possession and consisted of only seven hours of testimony.  Moreover, the element of possession was the only litigated issue in the trial.  The jury indicated that it was deadlocked three times, and the Court both read the modified <u>Allen</u> charge and sent a printed copy of it in to the jury.  Finally, the jury had been deliberating for almost twice as long as it took for the evidence to be presented.  The Court, after consulting with the parties as it had after each indication of deadlock, concluded that further deliberation would be hopeless.

Although defense counsel contends that the Court should have more seriously considered the alternative of keeping the jurors until the end of the day, after hearing from both parties, the Court determined that doing so would be unreasonable given the jury's third emphatic statement of deadlock.  The First Circuit has repeatedly warned against courts requiring further deliberation after jurors have repeatedly communicated deadlock. See McIntosh, 380 F.3d at 555 ("Nor do we accept the appellants' suggestion that the district court abused its discretion by not requiring the jury to deliberate longer.").  Furthermore, there is always a risk that "a jury forced to continue to deliberate after it reported deadlock would compromise too easily, simply to be able to go home."  Julien, 318 F.3d at 320; see also Barboni, 62 F.3d at 7 n.1 (noting that by "disregarding the jurors . . . and demanding further deliberation, the court might have risked pressuring jurors into abandoning good faith opinions merely for the sake of reaching unanimity").

These facts are almost indistinguishable from other cases in which the First Circuit upheld a declaration of a mistrial due to a deadlocked jury.  See McIntosh, 380 F.3d at 555-56 (finding that after three notes from the jury indicating deadlock and a modified Allen charge "we cannot say that the district court acted unreasonably in pulling the plug"); Julien, 318 F.3d at 320 (affirming mistrial after three deadlock notes and "the last note came after a total of sixteen hours of deliberation in a case

which was not complex and involved only fourteen hours of testimony"); Barboni, 62 F.3d at 7 (affirming mistrial when the trial was "a relatively short one, and the legal issues at stake were not complex," and when the "court polled the jurors on this point with great care before concluding that further deliberation would be futile"). The First Circuit explained the relevant considerations before declaring a mistrial in Keene:

> Considering what transpired here – the brevity of the trial, the simplicity of the questions confronting the jury, the length of deliberations, the fact that the court already had given a modified Allen charge without success, and the increasingly adamant manner in which the jurors announced that they were deadlocked – the judge's decision to declare a mistrial seems well within the realm of his discretion. Put another way, the record manifests the "high degree" of necessity that is required before the presiding judge lawfully can declare a mistrial, over the defendant's objection, in a criminal case.

287 F.3d at 234-35. In this case, as well, the circumstances justified declaring a mistrial.

### 2. Reading of the Allen Charge

Defendant argues that even if the Court properly declared a mistrial on Monday afternoon, that decision was poisoned by the erroneous act of giving the Allen charge, over his objection, late Friday afternoon and offering jurors the opportunity to decide whether continued deliberation after the weekend would be worthwhile. To begin, the First Circuit has noted that "the giving, or withholding, of a supplemental instruction, or the contents of it if given, are matters committed to the trial

court's sound discretion." United States v. Parent, 854 F.3d 23, 25 (1st Cir. 1992). Furthermore, courts, including the First Circuit, have long been concerned about the inherently coercive nature of the Allen charge with respect to the jury. See United States v. Flannery, 451 F.2d 880, 883 (1st Cir. 1971) ("Like dynamite, [the Allen charge] should be used with great caution, and only when absolutely necessary."). It was not error, therefore, for the Court to be concerned with the coercive aspect of requiring the jury, which had twice declared itself deadlocked, to come back after the weekend to continue deliberating.[1]

By the time of the jury's second note that it was deadlocked, it had been deliberating for nearly thirteen hours and remained deadlocked over the same issue which had stymied them five hours earlier, when it first informed the Court that it could not reach a verdict. After reading the Allen charge to the jury, the Court told the jury to seriously consider whether returning on Monday would be fruitful. The First Circuit has affirmed the practice of a trial court judge asking jurors if continued deliberation would be worth the candle after reading

---

[1] Indeed, when the Court went back to talk to the jurors after declaring the mistrial, a juror sua sponte indicated that the jury was 11 to 1 for conviction. In light of the strong evidence against Defendant, the coercive effect of requiring additional deliberations would not likely have been to defendant's advantage.

10

them the Allen charge.  See Keene, 287 F.3d at 231, 235.

Despite defense counsel's protestations that the jury would feel rushed and not appreciate the solemnity of the Allen directive (Trial Tr. 5:17, March 17, 2006), the jury indicated that they wanted to give it another shot on Monday morning (Id. at 18).  The jury's collective decision to return on Monday to try, try again blunts any possible prejudice.  Furthermore, to the extent that the weekend hiatus dissipated the effect of the Allen charge, the Court sent in printed copies of the charge on Monday morning to remind jurors of their duty to conscientiously deliberate.  In addition, the Court communicated to the jurors on Monday morning that they should not feel rushed in any way, and that the jury room was theirs for as long as they wanted it. (Trial Tr. 6:19-20, Mar. 20, 2006.)

In the end, this jury was simply unable to reach a verdict, but not for lack of trying.  As Judge Wright once put it, "Indeed, a mistrial is as much a part of the jury system as a unanimous verdict."  Williams v. United States, 338 F.2d 530, 533 (D.C. Cir. 1964).

**ORDER**

Defendant's motion to dismiss the indictment is **<u>DENIED</u>**. (Docket No. 86.)

/s/ Patti B. Saris

---

PATTI B. SARIS
United States District Judge