UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10306-PBS |
| | ) | |
| TREVOR CHARLTON | ) | |

DEFENDANT'S RESPONSE TO
GOVERNMENT'S MOTION IN LIMINE

The government seeks, pursuant to Fed.R.Evid. 404(b), to admit evidence (1) that defendant stabbed Pedro Andrade prior to the discovery of the firearm, and (2) that defendant stated to Brockton detectives that he had previously been engaged in dealing drugs.

Defendant concedes that evidence of the stabbing is admissible under Fed.R.Evid. 404(b), and will request an appropriate limiting instruction.[1]

Defendant respectfully moves, however, that the Court deny the government's motion to admit defendant's statements that he had previously been engaged in dealing drugs. The government seeks to introduce these statements in order to establish that the defendant had a motive for possessing a firearm. The more compelling motive, however, is that defendant obtained the weapon

---

[1] Defendant disagrees, however, with the government's contention that evidence concerning the stabbing does not even implicate Fed.R.Evid. 404(b) because it is "inextricably intertwined" with the gun possession (see Govt. Br. at 8-9). The firearm possession charge could be tried without reference to the stabbing at all; the stabbing is thus clearly extrinsic offense evidence.

in order to protect himself from an anticipated reprisal by Andrade.  Because no evidence of drugs or any drug transaction was recovered during this investigation, any evidence that the defendant had engaged in drug-dealing would be, "at most, only tangentially probative on the issue of [firearm] possession." United States v. Currier, 821 F.2d 52, 56 (1st Cir. 1987). Because evidence of past drug-dealing is only marginally relevant and is "not necessary to complete the story of the crime," and, moreover, because it is substantially outweighed by unfair prejudice to the defendant, it should not be admissible at trial. See id.

Cases from this and other circuits have held that evidence of drug-dealing may be admissible under R. 404(b), as relevant to a defendant's motive for possessing a gun.  However, in those cases, the evidence of drug-dealing was closely intertwined with the charged offense of illegal possession of a firearm.  See, e.g., United States v. Thomas, 242 F.3d 1028, 1030-33 (11th Cir. 2001) (guns found during search warrant executed on basis of evidence of drug-dealing); United States v. Smith, 292 F.3d 90, 98-101 (1st Cir. 1997) (gun and drug paraphernalia found in apartment with defendant)[2]; United States v. Butcher, 926 F.2d

---

[2] The government, in its motion in limine, relies exclusively on Smith for the proposition that evidence of prior drug-dealing should be admissible under R. 404(b), because it is relevant to motive for gun possession. Gov't motion at 10. However, the court in Smith also found that evidence of drug-

2

811, 813, 816 (9th Cir. 1991) (gun and drugs found in car with defendant); United States v. Fuller, 887 F.2d 144, 147 (8th Cir. 1989) (gun and drug paraphernalia found in apartment with defendant); United States v. Simon, 767 F.2d 524, 527 (8th Cir. 1985) (same). In each of the cases cited, guns and drugs were found at the same location, or evidence of drug-dealing led directly to the recovery of the firearm. See id.

By contrast, in the instant case, there was no actual drug evidence recovered, and the events which led to the recovery of the gun were unrelated to any drug transaction. The defendant's statements to the police regarding past drug-dealing are relevant only to his own theory as to why he was attacked in the first place, which is at most tangentially relevant to the offense charged. See Currier, 821 F.2d at 56.

The First Circuit has held that evidence of drug-dealing is inadmissible when it is not "closely intertwined" with the charge of possession of a firearm, and when it is "not necessary to complete the story of the crime." Currier, 821 F.2d at 56. In

---

dealing had "special relevance" for two additional reasons in that case: because the defendant's drug operation demonstrated his control over the apartment where the gun was recovered; and because the government's informant had been in a position to see the gun during a drug transaction. Smith, 292 F.3d at 99. Smith is therefore distinguishable, because such other justifications are not present in this case. Rather, the evidence the government seeks to introduce would encourage the jury to find the defendant guilty because he had criminal propensities, which is not a legitimate purpose for admission under R. 404(b). Id.; see United States v. Burke, 948 F.2d 23, 26 (1st Cir. 1991).

the instant case, the story of the crime has nothing to do with drugs or a drug transaction, and can be explained to a jury without any reference to past drug-dealing. See id. Just as in Currier, the defendant's own statements regarding drug-dealing are not related to the incident that led to the charge of possession, and are only tangentially relevant to his motive for possession. See id. Because the defendant's own statements about past drug-dealing would cast him in a negative light and could be used for the impermissible purpose of demonstrating that the defendant has a propensity to commit crime, their prejudicial impact far outweighs their probative value, and therefore, they should not be admitted at trial. See id.

Furthermore, the First Circuit has held that where evidence of multiple prior bad acts under R. 404(b) are separable, a trial judge may limit the prosecutor's presentation to the more relevant evidence only, and restrict inquiry into the unfairly prejudicial details. See United States v. Burke, 948 F.2d 23, 27 (1st Cir. 1991), citing Currier, 821 F.2d at 56. The Burke court found that prejudicial evidence under R. 404(b) is admissible when it is "essentially inseparable" or "inextricably tied" to the facts of the case, but not when it is "reasonably separable" from the charged offense, and unfairly prejudicial to the defendant. Burke, 948 F.2d at 27. Thus, where the government seeks to introduce multiple prior bad acts of a defendant under

R. 404(b), those which are most clearly relevant to the charged offense should be admitted, but those with only tangential relevance and high prejudicial impact should be excluded.  See id.; Currier, 821 F.2d at 56.

Applying the Burke principle to the instant case, the government seeks to introduce two theories as to the defendant's motive for possessing a firearm: self-defense and drug-dealing. The first theory, that the defendant sought the weapon in self-defense after an altercation, is inextricably tied to the charge of possession, and is necessary to complete the story of the crime.  See Burke, 948 F.2d at 27.  However, the second theory, that the defendant possessed a handgun because he was a drug dealer, is factually separable from the rest of the incident, and is barely relevant to the charged offense.  See id.  Moreover, the impact of such evidence is unfairly prejudicial to the defendant in this case, because it portrays him as a bad person and indicates that he has a propensity to commit crime.  See Burke, 948 F.2d at 27; Currier, 821 F.2d at 56.  Because evidence of the defendant's prior drug-dealing in this case is only tangentially relevant to the defendant's motive for possessing a firearm, and because the probative value of such evidence is substantially outweighed by unfair prejudice to the defendant, evidence of prior drug-dealing should not be admitted under R. 404(b) at trial.

The government also seeks to bar the defendant from questioning police witnesses on cross-examination regarding closed Internal Affairs records without providing the government with notice as to the information the defendant believes is appropriate impeachment material and affording the government an opportunity to respond.  While the government's motion is premature as neither party is aware yet of the information contained in these records, the government concedes that proper impeachment evidence might be found within.  Prior complaints against police officers are treated as prior bad acts of civilian witnesses under the Federal Rules of Evidence, subject to the Fed.R.Evid. 403, 404, and 608.  Inasmuch as the rules are concerned, Rule 608(b) allows for the introduction of evidence of prior bad acts so long as the act is probative of the witness' veracity, but does not allow *extrinsic evidence* of these acts.  See Deary v. City of Gloucester, 9 F.3d 191, 196-197 (1st Cir. 1993) (district court did not err in allowing questioning of police supervisor as to another testifying officer's disciplinary record for filing wrongful reports, but did err in allowing the recall of that officer to contradict the supervisor's testimony of the disciplinary record, and introducing those records as extrinsic evidence banned under Rule 608).

Likewise, Rule 608(b) requires that the matter go directly to the witness' credibility.  In United States v. Taylor, 417

F.3d 1176 (11th Cir. 2005), the Eleventh Circuit agreed with the district court which barred Internal Affairs reports as to unfounded, unproven citizen complaints against police witnesses. The complaints alleged police brutality and one occasion of planting evidence. The court found that a single, unfounded, report of planting evidence did not constitute enough evidence to go against the officer's veracity in testimony, nor did they find that two reports, standing alone, were probative of a motive or racial bias to lie on the stand. Id.

    Thus, while the underlying facts of the Internal Affairs records might be admissible as either prior bad acts under Rule 608(b) or as prior convictions under Rule 609(a), the records themselves are inadmissible extrinsic evidence. Further, the court has broad discretion under Rule 403 to allow evidence for purposes of impeachment, the closer the evidence shown in the records comes to the witness' credibility, the higher the probative value with which to offset the prejudicial effect.

    The government has also moved in limine with respect to the scope of cross-examination of government witness Lisa Sanders. Specifically, the government moves to 1) permit cross-examination only with regard to the fact that Ms. Sanders has certain convictions; 2) limit cross-examination of Ms. Sanders on her prior arrests to the fact that she provided false information to the police; and 3) prohibit defendant from cross-examining Ms.

Sanders on the facts underlying her prior convictions.  As detailed below, there is no disagreement on the appropriateness of the first two areas of examination, and as to the third point defendant asserts that any ruling at this time would be premature and the court should defer ruling until after Ms. Sanders takes the stand.

First, the government concedes, and defendant agrees, that he is entitled to impeach Lisa Sanders, the government's sole civilian witness in this case, regarding her prior convictions. Accordingly, there is no disagreement on this point.  Second, the parties agree that specific prior instances of untruthfulness on the part of Ms. Sanders are equally fair game for cross-examination.  For example, Ms. Sanders has numerous adult and juvenile arrests.  During the course of some of these arrests, Ms. Sanders provided police with a false name and a false date of birth.  Clearly, Rule 608(b) of the Federal Rules of Evidence permits questioning on specific acts that are probative of a witness' veracity.  Therefore, the defendant is entitled to cross-examine Ms. Sanders on each and every instance of untruthfulness.

Third, the government moves to preclude the defendant from exploring the underlying details of Ms. Sanders' prior convictions.  Defendant believes any such ruling is premature. As a general rule, questioning regarding a prior conviction is

limited to the fact of conviction and the sentence imposed. United States v. Plante, 472 F.2d 829 (1st Cir. 1973). However, a greater inquiry into the essential facts surrounding the conviction is permitted where the witness opens the door to additional inquiry by attempting to "explain away" or equivocate in a "self-serving manner" with respect to prior convictions. United States v. Rogers, 41 F.3d 25 (1st Cir. 1994); United States v. Weisser, 417 F.3d 336 (2nd Cir. 2005); United States v. Barnes, 622 F.2d 107 (5th Cir. 1980); Unites States v. White, 22 F.3d 363, 370 (7th Cir. 2000); United States v. Swanson, 9 F.3d 1354, 1357-58 (8th Cir. 1993). Therefore, any ruling on this issue requires speculation on the part of the Court with regard to what Ms. Sanders may say, if anything, to open the door to permissible cross-examination.[3] Accordingly, the Court should defer ruling on this question until such time as the issue arises during the course of Ms. Sanders' testimony.

## CONCLUSION

For the foregoing reasons, the defendant respectfully requests that the government's motion in limine with respect to prior drug-dealing by the defendant be DENIED; with respect to the underlying facts of Ms. Sanders' prior convictions be deferred until after her testimony on direct examination; and

---

[3] Admission of the underlying facts of Ms. Sanders' prior convictions is arguably admissible under both Rule 609 and Rule 608(b) of the Federal Rules of Evidence.

with respect to any Internal Affairs Division records of police officers be deferred until their content is known.

```
                                TREVOR CHARLTON
                                By his attorneys,

                                /s/ Catherine K. Byrne
                                Catherine K. Byrne
                                   B.B.O. # 543838

                                /s/ Stylianus Sinnis
                                Stylianus Sinnis
                                   B.B.O. # 560148
                                Federal Defender Office
                                408 Atlantic Ave., 3rd Floor
                                Boston, MA  02110
                                Tel: 617-223-8061
```

### Certificate of Service

I, Catherine K. Byrne, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 29, 2007.

```
                                /s/ Catherine K. Byrne
                                Catherine K. Byrne
```