UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

**UNITED STATES OF AMERICA**    )
                                )
         v.                     )    CRIMINAL NO. 04-10306-PBS
                                )
**TREVOR CHARLTON**             )

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

Defendant Trevor Charlton (the "defendant") has submitted a sentencing memorandum (the "Memorandum") whereby he argues (1) that the credible evidence at trial shows that he did not possess the firearm at issue until after attacked by Pedro Andrade at 83 Forest Avenue, and (2) that the statutory minimum sentence of 15 years is sufficient to vindicate the purposes of sentencing set forth at 18 U.S.C. § 3553(a).  The government disagrees and urges the Court to impose a guidelines sentence of 235 months.

**I.    The Defendant Possessed the Gun Before the Attack**

The credible evidence adduced at trial establishes, by a preponderance of the evidence, that the defendant already had the firearm with him when he arrived at 83 Forest Avenue, and that the conduct of Pedro Andrade in attacking the defendant did not provoke the possession.

As the Court will recall, the testimony of Lisa Sanders showed that the defendant arrived at 83 Forest Avenue that evening in a car.  He parked in the parking lot.  Ms. Sanders approached the defendant and began talking to him through the open driver's side window.  As they were talking, a masked man

dressed in black – later identified as Pedro Andrade – ran up and began choking the defendant through the window.  While Ms. Sanders did not see precisely what occurred, the defendant later told the police that he managed to get a knife out of his back pocket and stabbed the assailant over his left shoulder.  Andrade ran off, and Ms. Sanders then saw the defendant reach over, take something out of the glove compartment, and get out of the car holding a black handgun.  She saw him work the slide as he headed after the attacker.  Ms. Sanders testified that the defendant stopped, however, and then came back and hugged her.

The defendant argues in the Memorandum that this Court should disbelieve Ms. Sanders's testimony and find instead that, consistent with the defendant's statement to the police later that night, he did not have the firearm with him in the car at 83 Forest Avenue, but instead went to 37 Ellsworth Street and retrieved the firearm from the hallway because he was concerned that Andrade would return.  The defendant argues in this regard that Ms. Sanders's credibility was undermined at trial; that, specifically, her testimony that she had no foreknowledge of the attack was "beyond belief"; and that had the defendant possessed a gun at the scene of the attack, he would have reached for it rather than a knife.  The defendant's argument has no merit, for at least three reasons.

First, the fact that the defendant used the knife in his

pocket to fend off Andrade is no evidence that he did not already have the firearm with him. The evidence at trial – both in the form of Sanders's testimony and in the form of the defendant's statement to the police – was that the was being choked by Andrade, with his head pressed against the steering wheel, as he sat in the driver's seat of the vehicle. Given that he was being held around the neck, he could not reach the glove compartment. Accordingly, he did what he could under the circumstances, and retrieved the knife from his pocket. As soon as this had served its purpose and Andrade had run off, the defendant *did* get the firearm out of the glove compartment.

Second, notwithstanding issues regarding Ms. Sanders's credibility, there was nothing at the trial to indicate why she would have fabricated a story of having seen the defendant with a firearm. To the contrary, when she first came to the United States Attorney's Office, after initially telling an Assistant United States Attorney and Brockton detectives a version that included nothing about the attack, and upon being told that her version made no sense and that she would be committing perjury if she gave an untruthful version of events to the grand jury, she said not only that she had witnessed an attack on the defendant but also that, after the attack, she had seen him retrieve a black handgun from the glove compartment and work the slide as he started out after the attacker. There was no evidence that

3

anyone had told her they thought the defendant had possessed a handgun at 83 Forest Avenue.  There also was no evidence that anyone had described for her the firearm that was later recovered at 37 Ellsworth Street.  Nonetheless, the description Ms. Sanders gave of the firearm she saw – essentially, a black handgun that was semiautomatic – was entirely consistent with the firearm eventually recovered.  This is powerful evidence that she did, in fact, see the defendant with this firearm at 83 Forest Avenue.

    Third, the defendant's own witness, Jerial Wilson, supported the view that the defendant had the firearm with him at 83 Forest Avenue and did not retrieve it from the hallway at 37 Ellsworth Street.  Mr. Wilson testified, among other things, that he lived at 37 Ellsworth Street and was standing just outside the front door that evening watching what was happening in front of the building.  He testified that he was standing there when the defendant pulled up in front of the building in a cab and got out wearing a shirt that had some apparent blood stains down near the waist.  Mr. Wilson testified that he remained standing outside the door until the police arrived a short time later, and that at no time did the defendant enter the building.  Accordingly, notwithstanding that the defendant told the police that he had returned to 37 Ellsworth Street and gotten the gun out of the hallway to protect himself from a potential further attack, the evidence shows that, in fact, he never went inside 37 Ellsworth

Street upon returning from 83 forest Avenue and instead stayed out front until the police arrived.

In sum, the evidence adduced at trial shows that the defendant already had the firearm with him, in the glove compartment of the car, when he went to 83 Forest Avenue, and that he did not later retrieve it only in response to the attack.

## II. A Guidelines Sentence Is Reasonable

The defendant argues that the minimum mandatory sentence required by statute – 15 years – is sufficient to achieve the purposes of sentencing set forth at 18 U.S.C. § 3553(a). The government disagrees and submits that a guidelines sentence of 235 months – the low end of the guidelines sentencing range of 235 to 293 months - is warranted.

### Nature and Circumstances of the Offense

The defendant argues that the defendant's possession of the firearm was provoked by the attack of Pedro Andrade. As shown above, however, the evidence instead shows that the defendant was already in possession of the firearm before the attack. Indeed, the evidence shows that the defendant, as an armed career criminal, was not simply in constructive possession of a firearm hidden away in his residence, but instead was actively carrying the firearm as he drove about Brockton that night. Any possession of a firearm by an armed career criminal is serious, but the active carrying of the firearm renders the case

particularly serious.

### History and Characteristics of the Defendant

The defendant argues that the history of abuse at the hands of his father and his history of depression, suicidal ideation, and anxiety are mitigating factors.  On the other side of the scale, however, is the defendant's very serious and significant criminal history.  As a juvenile he was adjudged delinquent of possession of ammunition and possession of an altered firearm (PSR ¶ 44).  As a adult, he was convicted of being a disorderly person based on conduct that occurred in a Store 24, including conduct whereby he threatened a store clerk with the words, "I'll fucking cap you bitch" (PSR ¶ 48); was convicted of two counts of threatening (PSR ¶¶ 49-50); was convicted of two counts of distribution of a class B substance (PSR ¶¶ 51-52); was convicted of assault with a dangerous weapon, based on conduct that occurred at a Hess gas station that included the defendant's threatening with a large knife a woman with whom he was having an argument (PSR ¶ 54); was convicted of assault and battery to collect a loan, based on conduct that the defendant and another attacked the victim in a bar, causing a deep cut on the top of the victim's head (PSR ¶ 56); and was convicted of two additional counts of assault and battery with a dangerous weapon (PSR ¶ 57). The defendant's criminal history thus shows previous unlawful possession of a firearm as a juvenile, and multiple instances of

serious violent and drug offenses as an adult. Even absent armed career criminal treatment, the defendant has 21 criminal history points, 8 more than the minimum of 13 that qualifies a defendant for criminal history Category VI. PSR ¶ 63. He also has two more than the minimum three predicates necessary to qualify him for armed career criminal treatment. PSR ¶ 64. In light of his very serious criminal history, a guidelines sentence is reasonable and warranted.

### Need to Reflect Seriousness of Offense and Promote Respect

Possession of a firearm by an armed career criminal is an extremely serious offense, as reflected by the sanctions provided for by Congress. Here, given the defendant's particularly serious criminal background, and given the evidence that he was actively carrying the firearm with him, a guidelines sentence, above the mere minimum of 15 years required by law, is necessary to promote respect for the law.

### Deterrence

A guidelines sentence of 235 months will help deter others similarly situated from possessing firearms.

### Need to Protect Public From Defendant

A guidelines sentence is also warranted to protect the public from further crimes of the defendant. The defendant's criminal history shows him to be a man prone to violence with little provocation. A guidelines sentence will help ensure that

the defendant's violent proclivities do not result in harm to innocent persons such as the Store 24 clerk or the motorist at the Hess station referred to above.

### Need to Provide Training

The defendant indicates that he wishes to avail himself of educational and vocational training in prison, and a guidelines sentence would not interfere with such.

### The Kinds of Sentences Available

A guidelines sentence of 235 months is among the range of sentences available.

### Victim's Wrongful Conduct

The defendant argues that Pedro Andrade's wrongful conduct contributed significantly to provoking the offense behavior. However, as shown above, the evidence at trial established that the defendant possessed the firearm in question before he was assaulted by Pedro Andrade.  Were the defendant being sentenced for stabbing Pedro Andrade, his argument might have some force. Here, however, the testimony of Lisa Sanders and the testimony of Jerial Wilson established that the defendant did not retrieve the firearm from the hallway of 37 Ellsworth Street after the assault but instead was already in possession of the firearm, and was actively carrying it about the city, before the assault. Accordingly, Pedro Andrade's conduct does not provide a basis for departing below the guidelines range.

**III. The Armed Career Criminal Enhancement Applies**

The defendant recognizes that, unless and until the Supreme Court overrules <u>Almendarez-Torres v. United States</u>, 523 U.S. 224 (1998), armed career criminal predicate convictions do not need to be proved to a jury beyond a reasonable doubt.  See <u>United States v. Jiminez-Beltre</u>, 440 F.3d 514 (1st Cir. 2006). Accordingly, this Court should sentence the defendant as an armed career criminal.

## CONCLUSION

For the foregoing reasons, this Court should sentence the defendant to 235 months in prison.

                        Respectfully submitted,

                        MICHAEL J. SULLIVAN
                        United States Attorney

      By:   <u>/s/Robert E. Richardson</u>
            ROBERT E. RICHARDSON
            Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I, Robert E. Richardson, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 9, 2008.

                        <u>/s/Robert E. Richardson</u>
                        ROBERT E. RICHARDSON